UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANGELA MCINTOSH on behalf of
TLA, a minor child,

        Plaintiff,                 Civil Action No. 12-cv-10361

     v.                     District Judge Denise Page Hood
                                Magistrate Judge Laurie J. Michelson

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION TO
## DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [8] AND
## GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [11]

Plaintiff Angela McIntosh, proceeding on behalf of her preschool-age daughter, TLA, appeals Defendant Commissioner of Social Security's denial of TLA's application for Supplemental Security Income. (*See* ECF No. 1, Compl.; Tr. 13.) Before the Court for a Report and Recommendation (ECF No. 2) are the parties' cross-motions for summary judgment (ECF Nos. 8, 11). Plaintiff asserts that the disability decision must be reversed primarily because substantial evidence does not support the Administrative Law Judge's findings that TLA had no limitations in her ability to (1) acquire and use information, (2) attend and complete tasks, and (3) interact and relate to others. (ECF No. 8, Pl.'s Mot. Summ. J. at 7-16; *see also* ECF No. 12, Pl.'s Resp. to Def.'s Mot. Summ. J.) The Commissioner urges the Court to affirm the denial of benefits because substantial evidence supports these findings or, if not, the erroneous findings are harmless. (ECF No. 11, Def.'s Mot. Summ. J. at 5-10.) For the reasons set forth below, this Court finds that substantial evidence supports the ALJ's ratings of TLA's limitations in the three contested

functional domains. The Court therefore RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 8) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 11) be GRANTED, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner of Social Security be AFFIRMED.

## I. BACKGROUND

TLA, born in April 2008, is now four years old. (Tr. 73.) Her impairments include hearing loss in her right ear and delayed speech and language development. (*See* Tr. 82.)

### A. Procedural History

On August 4, 2010, when TLA was two years old, Plaintiff filed an application for Supplemental Security Income ("SSI") on behalf of TLA. (Tr. 13.) The Commissioner initially denied TLA's application on December 29, 2010. (*Id.*) Ms. McIntosh then requested an administrative hearing, and on July 12, 2011, she appeared without counsel before Administrative Law Judge Timothy C. Scallen, who considered TLA's application *de novo*. (*See* Tr. 31-45, 13-24.) In an August 26, 2011 decision, the ALJ found that TLA was not disabled. (*See* Tr. 13-24.) The ALJ's decision became the final decision of the Commissioner on January 12, 2012 when the Social Security Administration's Appeals Council denied Plaintiff's request for review. (Tr. 1.) Plaintiff filed this suit on TLA's behalf shortly thereafter. (ECF No. 1, Compl.)

### B. Summary of the Administrative Record

Days after TLA was born, a hearing test revealed that she had hearing loss in her right ear. (Tr. 132, 136.) In July 2010, when TLA was two years old, she was diagnosed with "otitis media with effusion" (fluid in the middle ear) and "conductive hearing loss"; doctors placed tubes in TLA's ears. (Tr. 141.) Shortly thereafter, an "auditory brainstem response" ("ABR") test revealed "mild

2

high frequency hearing loss in the right ear and normal hearing in the left ear."  (Tr. 137.)

In August 2010, Plaintiff completed a "Developmental Attainment Form" about her daughter.  (Tr. 81-82.)  She provided that TLA's speech was delayed, that TLA suffered from hearing loss, and that TLA "quite-often" fought with her nine-year-old sister.  (Tr. 82.)  TLA's mother also indicated that TLA could not perform any of the listed language tasks, including, talking in two- to four-word sentences, pointing to named parts of her body, and following two-step commands.  (Tr. 81.)

In November 2010, Nancy Moshier, a certified speech-language pathologist and "acceptable medical source" for speech and language impairments, *see* 20 C.F.R. § 416.913(a)(5), completed a speech and language consultative examination of TLA.  (Tr. 146-49.)  TLA's mother reported concerns about TLA's speech and language development but denied "[b]ehavioral, emotional, social and visual problems."  (Tr. 146.)  In terms of speech intelligibility, Moshier found,

> To the trained ear (examiner) [TLA's] overall speech was intelligible 90% of the time in known contexts consisting of single words and 0% of the time in unknown contexts due to sound omissions and jargon. . . . [TLA's] speech did not improve when asked to repeat. . . . According to Ms. McIntosh, unfamiliar listeners sometimes understand her daughter in known contexts and never in unknown contexts and she attempts to translate.

(Tr. 147.)  On a formal language test, TLA scored in the fifth percentile in auditory comprehension, the third percentile in expressive communication, and her "Total Language Score" was at the third percentile.  (Tr. 147.)  In a portion of her report labeled "Severity of [D]isorder/Diagnosis," however, Moshier provided that TLA had only a "mild" impairment in articulation/phonology, "moderate" impairment in receptive language (understanding language), and "moderate" impairment in expressive language (sharing thoughts or feelings).  (Tr. 149.)

3

Also in November 2010, Dr. Ariel Waitzman evaluated TLA's hearing for Disability Determination Services. (Tr. 151-54.) Dr. Waitzman performed a sound-field audiogram which revealed "moderate hearing loss." (Tr. 154.) She recommended that TLA undergo a sedated auditory brainstem response [ABR] test. (*Id.*) According to Dr. Waitzman, "[i]f the ABR confirms the audiogram results of a moderate hearing loss[,] [TLA] should be considered for binaural amplification [hearing aids]. This level of hearing loss could impair [TLA's] ability to acquire language, and could impair the child's verbal communication skills down the road." (*Id.*)[1]

In December 2010, Dr. Muhammad Mian, an ophthalmologist, and Cheryl Lang, a speech-language pathologist, reviewed TLA's medical records for the Social Security Administration. (Tr. 49-52.) Lang and Dr. Mian provided that in the domain of acquiring and using information, TLA had "no" limitation. (Tr. 49.) But after a brief narrative mentioning TLA's raw scores from Moshier's testing, Lang provided, "Given the age of [TLA], the preponderance of the evidence supports a [less-than-marked] limitation on acquiring and using information." (*Id.*) In the domain of attending and completing tasks, Lang and Dr. Mian provided that TLA had "no" limitation. (*Id.*) Regarding TLA's ability to interact and relate with others, Lang and Dr. Mian again found "no" limitation. (*Id.*) Lang, in a brief narrative noting Moshier's finding that TLA had 0% intelligibility when the context of her speech was unknown, further stated, "[t]he preponderance of the evidence

---

[1]The ABR test was performed, but those results, along with three other sets of medical records (Tr. 122-31, 159-69), only became part of the administrative record when Plaintiff sought Appeals Council review (*see* Tr. 5); the Court therefore does not consider them for purposes of this appeal. *See Davenport v. Comm'r of Soc. Sec.*, No. 10-13842, 2012 WL 414821, at *1 n. 1 (Jan. 19, 2012), *report and recommendation adopted by* 2012 WL 401015 (E.D. Mich. Feb. 8, 2012) ("In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision . . . those 'AC' exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review." (citing *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir.1996))).

4

supports a [less-than-marked] limitation on interacting and relating [with] others." (*Id.*)

In May 2011, TLA, then three years old, underwent testing for an individualized education program ("IEP"). (Tr. 99, 105.) On a form entitled "Present Level of Academic Achievement and Functional Performance," TLA's IEP team (or someone on her IEP team) provided,

> At the time of testing, [TLA] presented language skills that were at least ten or more months below average age level expectancy. She did not display skill in: identifying familiar objects/pictures, understanding inhibitory words, understanding the use of objects, using word combinations or 3-4 words in spontaneous speech. Additionally, delays (6 or months [*sic*]) were noted in her con[d]ition and fine motor skills[.] [TLA] did not display skill in matching objects or building a cube tower.

(Tr. 105.) "[T]esting" apparently refers to an "informal test" or "[s]ystematic [o]bservation" where TLA was able to, among other things, match objects to objects, imitate/initiate vocalizations or words, and identify and label familiar objects and pictures 80% of the time. (Tr. 109; *see also* Tr. 92 (June 2011 testing).)

As of June 2011, TLA's IEP plan involved 30 minutes per month with a teacher consultant and 30 minutes of speech and language services per week. (Tr. 94.) That month, TLA's IEP team (or someone on her IEP team) provided that TLA was "making progress toward her current IEP goals and objectives" and that she had "good motor skills, self-care, and reasoning skills." (Tr. 112.) However, according the IEP report, TLA "continue[d] to exhibit a language delay . . . 10 months or more below her chronological age." (*Id.*) Deficits in several areas, including, TLA's ability to recall simple verbal messages at varying distances and volumes" were having "an adverse effect on [TLA's] educational performance." (*Id.*)

5

### C.  Plaintiff's Testimony at the Hearing Before the ALJ

Ms. McIntosh testified on TLA's behalf at the July 2011 administrative hearing before the ALJ.  Plaintiff stated that TLA was "not able to say a lot of words, sentences or combine words." (Tr. 35.)  Ms. McIntosh specifically noted that TLA was not able to name the pictures she saw in books or name "a lot" of the colors.  (Tr. 37.)  According to Plaintiff, TLA also "beat[] . . . up" her toys and fought with other children.  (Tr. 36-37.)  Plaintiff also stated that her daughter acted out by ignoring her and that TLA absorbed "very little" of what she tried to teach her.  (Tr. 35.)  Plaintiff explained that she had to use a "deep tone" and be "very vocal" with her instruction to TLA.  (Tr. 41.)  It appears that TLA was active throughout the hearing requiring Ms. McIntosh (and at times the ALJ) had to repeatedly instruct TLA to "sit down," "come back," or "stop."  (E.g., Tr. 35, 36, 37, 41, 42, 44.)

## II.  THE ADMINISTRATIVE LAW JUDGE'S FINDINGS

A child under age eighteen is considered "disabled" within the meaning of the Social Security Act if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C).  The Social Security regulations set forth a sequential three-step process for determining children's disability claims: first, the child must not be engaged in "substantial gainful activity"; second, the child must have a "severe" impairment; and third, the severe impairment must meet, medically equal, or functionally equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings").  *See* 20 C.F.R. § 416.924.

To "meet" a listed impairment, a child must demonstrate both "A" and "B" criteria of the

6

impairment.  *See* 20 C.F.R. pt. 404, subpt. P, app. 1.  "Paragraph A of the listings is a composite of medical findings which are used to substantiate the existence of a disorder" whereas the "purpose of the paragraph B criteria is to describe impairment-related functional limitations which are applicable to children."  *Id.*  To be found disabled based on meeting a listed impairment, the claimant must exhibit all the elements of the Listing.  *See Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003).

If a child's impairment(s) do not "meet" a listed impairment, the impairment(s) may still be medically or functionally equal in severity and duration to the medical criteria of a listed impairment.  *See* 20 C.F.R. §§ 416.926, 416.926a;  *Vansickle v. Comm'r of Soc. Sec.*, 277 F. Supp. 2d 727, 729 (E.D. Mich. 2003) ("Medical equivalency is covered by 20 C.F.R. § 416.926; functional equivalency is covered by Section 416.926a.").  "To determine medical equivalence, the Commissioner compares the symptoms, signs, and laboratory findings concerning the alleged impairment with the medical criteria of the listed impairment."  *Walls v. Comm'r of Soc. Sec.*, No. 1:08CV254, 2009 WL 1741375, at *8 (S.D. Ohio June 18, 2009) (citing 20 C.F.R. § 416.926(a)). A claimant can demonstrate medical equivalence in any of three ways:

> (1) by demonstrating an impairment contained in the Listings, but which does not exhibit one or more of the findings specified in the particular listing, or exhibits all of the findings but one or more of the findings is not as severe as specified in the particular listing, if the claimant has other findings related to his impairment that are at least of equal medical significance to the required criteria;

> (2) by demonstrating an impairment not contained in the Listings, but with findings at least of equal medical significance to those of some closely analogous listed impairment; or

> (3) by demonstrating a combination of impairments, no one of which meets a Listing, but which in combination produce findings at least of equal medical significance to those of a listed impairment.

*Koepp v. Astrue*, No. 10-C-1002, 2011 WL 3021466, at *10 (E.D. Wis. July 22, 2011) (citing 20 C.F.R. § 404.1526(b)); *see also* 20 C.F.R. § 416.926. "The essence of these subsections is that strict conformity with the Listing Requirements is not necessarily required for a finding of disability." *Emeonye v. Astrue*, No. 04-03386, 2008 WL 1990822, at *4 (N.D. Cal. May 5, 2008). Thus, "[i]f a plaintiff is only able to demonstrate most of the requirements for a Listing or if he or she is able to demonstrate analogous or similar impairments to the impairments of a Listing, the plaintiff may nonetheless still satisfy the standards if the plaintiff can show impairments of equal medical significance." *Id.*

To determine functional equivalence, an ALJ is to evaluate six "domains" of functioning: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being. *See* 20 C.F.R. § 416.926a. Functional equivalence to a listed impairment exists when the child has an "extreme" limitation in one, or "marked" limitations in two of the six domains. *See* 20 C.F.R. § 416.926a(d). A "marked" limitation results if the child's impairment(s) interferes "seriously" with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). A marked limitation is the equivalent of the functioning expected to be found on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. *Id.* An "extreme" limitation exists when a child's impairment(s) interferes "very seriously" with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i). An extreme limitation is the equivalent of the functioning expected to be found on standardized testing with scores that are at least three standard deviations below the mean. 20 C.F.R. § 416.926a(e)(3).

8

Applying this framework, ALJ Scallen concluded that TLA had the following severe impairments: speech and language delay occasioned by moderate bilateral hearing loss. (Tr. 16.) He next found that TLA's impairments did not meet or medically equal a listed impairment. (*Id.*) Plaintiff challenges neither of these findings. (*See generally*, ECF No. 8, Pl.'s Mot. Summ. J.) Turning to functional equivalence, the ALJ concluded that TLA had (1) "no limitation" in acquiring and using information, (2) "no limitation" in attending and completing tasks, (3) "no limitation" in interacting and relating with others, (4) "no limitation" in moving about and manipulating objects, (5) "no limitation" in caring for yourself, and (6) "less than marked limitation" in health and physical well-being. (Tr. 18-24.) Accordingly, the ALJ concluded that TLA had not been disabled since August 4, 2010: the date Plaintiff filed the SSI application on TLA's behalf. (Tr. 24.)

## III.  STANDARD OF REVIEW

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited: the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted). In deciding whether substantial evidence supports the ALJ's decision, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for

9

the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider that record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." (internal quotation marks omitted)). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

## IV. ANALYSIS

Ms. McIntosh argues that the ALJ erred in evaluating three of the six functional domains: (1) acquiring and using information, (2) attending and completing tasks, and (3) interacting and relating to others. (Pl.'s Mot. Summ. J. at 10-16.) She says that "the ALJ's opinion finding of no limitations at all in any of the[se] three domains . . . is clearly unsupported by the requisite

10

substantial evidence." (*Id.* at 16.)  Plaintiff has good reason to question the "no" limitation rating

in each of these functional domains; a preponderance of the evidence appears to support greater

limitations.  But, for the reasons set forth below, and constrained by the present record, the Court

concludes that substantial evidence supports the ALJ's ratings.  Moreover, because the record

clearly reflects less-than-marked limitations in these three domains, Plaintiff has not shown that the

ALJ's "no" limitation findings constitute harmful error.

## A. Acquiring and Using Information

The acquiring and using information domain concerns "how well [a child] acquire[s] or

learn[s] information, and how well [the child] use[s] the information [she] . . . learned." 20 C.F.R.

§ 416.926a(g).  The regulations also provide "age group descriptors"; the following descriptor is

most relevant in this case:[2]

> (ii) Older infants and toddlers (age 1 to attainment of age 3).  At this
> age, you are learning about the world around you.  When you play,
> you should learn how objects go together in different ways.  You
> should learn that by pretending, your actions can represent real
> things.  This helps you understand that words represent things, and
> that words are simply symbols or names for toys, people, places, and
> activities.  You should refer to yourself and things around you by
> pointing and eventually by naming.  You should form concepts and
> solve simple problems through purposeful experimentation (e.g.,
> taking toys apart), imitation, constructive play (e.g., building with
> blocks), and pretend play activities. You should begin to respond to
> increasingly complex instructions and questions, and to produce an
> increasing number of words and grammatically correct simple
> sentences and questions.

---

[2]SSI benefits are payable only after the application date, *Moore ex rel. J.L.M. v. Comm'r of Soc. Sec.*, No. 1:10-CV-834, 2011 WL 9133981, at *1 n.1 (W.D. Mich. Nov. 17, 2011), *report and recommendation adopted by* 2012 WL 4340820 (W.D. Mich. Sept. 20, 2012); on the SSI application date, TLA was two years old.  Further, only the IEP reports post-date TLA's third birthday, and even then by less than three months.

20 C.F.R. § 416.926a(g)(2)(ii); *see also* S.S.R. 09-03p, 2009 WL 396025, at *4.

The Court agrees with Plaintiff that it is difficult to reconcile some of the record evidence with the ALJ's finding of "no" limitation in this domain. Moshier, the certified speech-language pathologist, administered a test showing that TLA's auditory comprehension was at the fifth percentile, her expressive communication was at the third percentile, and her "Total Language Score" at the third percentile. (Tr. 147.) TLA's mother testified that TLA had difficulty naming pictures she saw in books. (Tr. 37.) Plaintiff elsewhere provided that, when TLA was two years old, she could not use two- to four-word sentences, point to named parts of her body, or follow two-step commands. (Tr. 81.) At age three, TLA's IEP team noted that TLA was about 10 months behind in language development. (Tr. 112.) All of this is substantial evidence that TLA had at least some limitation in, among other things, "respond[ing] to increasingly complex instructions and questions, and . . . produc[ing] an increasing number of words and grammatically correct simple sentences and questions." 20 C.F.R. § 416.926a(g)(2)(ii); *see also* S.S.R. 09-03p, 2009 WL 396025, at *4.

On the other hand, a preponderance of the evidence need not support an ALJ's findings before a court may affirm them. *Rogers*, 486 F.3d at 241 ("Substantial evidence is defined as more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (internal quotation mark omitted)). Here, Lang and Dr. Mian reviewed Moshier's report, Dr. Waitzman's report, and Ms. McIntosh's August 2010 "Development Attainment Form" (among other evidence) and concluded that TLA had "no" limitation in this domain. (Tr. 49; *see also* Tr. 48 (findings of fact).) While the Court tends to disagree with this finding, it remains that the Mian-Lang opinion is the best evidence in the record as to the specific level of TLA's limitation in the six functional domains because (1)

12

no other individual, whether lay person or medical professional, provided functional domain ratings, (2) in reaching their conclusions, Dr. Mian and Ms. Lang reviewed all of the significant evidence in the record save for the later-arising IEP reports, (3) Mian is a physician (albeit an eye doctor) and Lang is a speech pathologist, and (4) Dr. Mian and Ms. Lang have familiarity with the Social Security Administration's functional domains.  As reasonably stated by the ALJ:

> As for the opinion evidence, significant weight was accorded the opinions of the state agency medical consultants, Cheryl Lang, SLP and Muhammad Mian, M.D., that the claimant did not meet, medically equal, or functionally equal any of the listings, and that the claimant displayed less than marked limitation in the domain of health and well being, but no limitations in the domains of acquiring and using information, attending to and completing tasks, interacting and relating to others, moving about and manipulating objects and caring for herself.

> Dr. M[ia]n and Ms. Lang each had the opportunity to review the claimant's records, each was reporting within the bounds of the respective professional certifications, and each is well versed in the terminology and analytical framework employed in the resolution of these claims.

> No other treating or examining physical or other medical health provider rendered an opinion relevant to the issues under consideration in this claim.

(Tr. 18.)  Thus, while there is undoubtedly evidence to support a finding that TLA had some limitations in the domain of acquiring and using information, the Court cannot say that the ALJ's adoption of the professional opinions of Dr. Mian and Ms. Lang — who had most of the same information available to them as did the ALJ — was unreasonable; their opinion is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Rogers*, 486 F.3d at 241.

Plaintiff briefly argues that the ALJ erred in assigning significant weight to the Lang-Mian

13

opinion because Dr. Mian and Ms. Lang did not examine TLA whereas Ms. Moshier and Dr. Waitzman did. (Pl.'s Mot. Summ. J. at 8-9.) It is true that examining opinions are generally entitled to more weight than non-examining opinions. *See* 20 C.F.R. § 404.1527(c)(1). But, critically, neither Dr. Waitzman nor Ms. Moshier rated TLA in the six functional domains. So their findings do not directly contest those of Dr. Mian and Ms. Lang.

Moreover, even if the ALJ erred in finding that TLA had "no" limitation in the domain of acquiring and using information, Plaintiff has not shown how this error prejudiced the disability determination. The record strongly supports that TLA is less-than-markedly limited in this domain. First, as noted, Moshier found that TLA had only mild to moderate impairments in articulation/phonology and receptive and expressive language. (Tr. 149.) Second, although TLA's IEP team noted a language delay of 10 months, their testing showed that TLA could match objects to objects, imitate/initiate vocalizations or words, and identify and label familiar objects and pictures 80% of the time. (Tr. 109; *see also* Tr. 92 (June 2011 testing).) Third, Lang, after noting Moshier's test results, remarked, "[g]iven the age of [TLA], the preponderance of the evidence supports a [less-than-marked] limitation on acquiring and using information." (*Id.*) Taking the record as a whole then, Plaintiff has not shown that a remand has any reasonable possibility of resulting in a "marked" or "extreme" rating in this domain.

### B. Attending and Completing Tasks

The attending and completing tasks domain concerns "how well [a child is] able to focus and maintain [her] attention, and how well [she] begin[s], carr[ies] through, and finish[es] [her] activities, including the pace at which [she] perform[s] activities and the ease with which [she] change[s] them." 20 C.F.R. § 416.926a(h). In this case, the most relevant age-group descriptor

14

provides:

> Older infants and toddlers (age 1 to attainment of age 3).  At this age, you should be able to attend to things that interest you and have adequate attention to complete some tasks by yourself.  As a toddler, you should demonstrate sustained attention, such as when looking at picture books, listening to stories, or building with blocks, and when helping to put on your clothes.

20 C.F.R. § 416.926a(h)(2)(ii).  A Social Security Ruling further provides:

> For example, a teacher may report that a child "pays attention well with frequent prompting."   The need for frequent prompting demonstrates that the child is not paying attention as appropriately, effectively, or independently as children of the same age who do not have impairments.  Despite the fact that the child is paying attention with prompting, this child is not functioning well in this domain.

S.S.R. 09-4p, 2009 WL 396033, at *2.

Plaintiff argues that "the ALJ inexplicably found that T.L.A. had absolutely no limitations as to this domain . . . .  This finding is also unsupported by substantial evidence, which will only support a finding of at least marked, if not extreme, limitations . . . ."  (Pl.'s Mot. Summ. J. at 14.)  While "inexplicably" is too strong, the Court finds some merit in the first half of this claim.  At the administrative hearing, Plaintiff stated that she had to use a "deep" tone and be "very vocal" for TLA to follow her directions.  (Tr. 40-41.)  TLA's behavior at the administrative hearing also suggests some limitations in attention and concentration; as Plaintiff argues, "[d]uring the course of [the hearing] that lasted only 13 minutes, either [P]laintiff or the ALJ . . . attempted to verbally restrain or redirect T.L.A. on at least six occasions, with obvious poor results."  (Pl.'s Mot. Summ. J. at 14.)  Further, Moshier noted that TLA's attention "required constant redirection and support" and that "[a]t times[,] [TLA] could not be redirected to the task and the task was discontinued." (Tr. 148.)  All of this is substantial evidence of at least some limitation in the domain of attending and

15

completing tasks.

But the Court cannot agree with the second half of Plaintiff's claim: that substantial evidence only supports a finding that TLA has "marked" or "extreme" limitations in the attending and completing tasks domain. First, at the evaluation with Moshier, Plaintiff told Moshier that TLA could follow simple commands. (Tr. 148.) Moshier noted that TLA could stack and knock down blocks and, although she eventually moved around the room, TLA was able to sit in a chair for "the initial part of the evaluation." (*Id.*) Moshier noted that TLA "was able to engage in play with the evaluator [for] about one minute . . . ." (*Id.*) Second, and stronger, Ms. Lang and Dr. Mian, who, again, provided the only rating in the record, found that TLA had "no" limitation in this domain. (Tr. 49.) Finally, as the Commissioner argues, Plaintiff's testimony that she needed to be very vocal with TLA, and the fact that TLA wandered during the administrative hearing, is weak evidence of a "marked" or "extreme" limitation. In order for this evidence to support such a finding, Plaintiff would have to offer the Court at least some baseline for comparison. (*See* Def.'s Mot. Summ. J. at 9-10.)

Thus, taking the evidence as whole, a preponderance of the evidence may support a finding that TLA had some (rather than no) limitations in the domain of attending and completing tasks. But the Court cannot take the further step of concluding that insubstantial evidence supports the ALJ's conclusion that TLA had "no" limitations. Further still, the evidence Plaintiff relies on, when viewed in the context of the entire record, falls well short of establishing that TLA was markedly or extremely limited in the domain of attending and completing tasks. Plaintiff has therefore not shown that remand for the ALJ to again rate this domain would be anything other than a formality.

16

### C. Interacting and Relating with Others

The interacting and relating with others domain concerns "how well [a child] initiate[s] and sustain[s] emotional connections with others, develop[s] and use[s] the language of [her] community, cooperate[s] with others, compl[ies] with rules, respond[s] to criticism, and respect[s] and take[s] care of the possessions of others." 20 C.F.R. § 416.926a(i). The most relevant age descriptor provides:

> Older infants and toddlers (age 1 to attainment of age 3). At this age, you are dependent upon your caregivers, but should begin to separate from them. You should be able to express emotions and respond to the feelings of others. You should begin initiating and maintaining interactions with adults, but also show interest in, then play alongside, and eventually interact with other children your age. You should be able to spontaneously communicate your wishes or needs, first by using gestures, and eventually by speaking words clearly enough that people who know you can understand what you say most of the time.

20 C.F.R. § 416.926a(i)(2)(ii).

The ALJ again found that TLA had "no" limitation in this domain. (Tr. 20.) And the Court again finds that this conclusion is not unassailable. Plaintiff testified that TLA beat up her toys and fought with her nine-year old sister. (Tr. 36-37.) At the evaluation with Moshier, TLA "threw toys or cleared off the desk by knocking toys off the desk." (Tr. 148.) Indeed, Moshier noted that TLA's "[p]ragmatic skills," skills that involve communicating in a manner consistent with the "rules for social language" (e.g., speaking politely), *see* American Speech-Language-Hearing Association, *Social Language Use (Pragmatics)*, http://www.asha.org/public/speech/development/pragmatics.htm, (last visited Oct. 21, 2012), were "below what [was] expected for a child of [TLA's] . . . age." (Tr. 148.)

Yet, as with the other domains analyzed so far, the Court finds that substantial evidence

17

supports the ALJ's conclusion that TLA has no limitation in the domain of interacting and relating to others.  First, at the evaluation with Moshier, Plaintiff herself denied that TLA had any behavioral, emotional, or social problems. (Tr. 146.)  Second, although Moshier noted that TLA was "below" normal in terms of following the rules of social language, she did not provide how much below.  The only evaluators that indirectly did so were Dr. Mian and Ms. Lang by indicating "no" limitation in the domain of interacting and relating to others.  Finally, as the Commissioner argues, TLA's IEP team indicated that socio-emotional or behavioral issues were not an area of need for her. (*See* Def.'s Mot. Summ. J. at 8 (citing Tr. 112).)

In short, as with the other two domains already addressed, the Court questions the ALJ's finding of "no" limitation in this domain; but this does not mean that substantial evidence does not support that conclusion.  Moreover, Plaintiff has not shown that the ALJ's "no" limitation finding resulted in any prejudice on the merits.  In fact, Lang, the state-agency speech pathologist, reviewed Moshier's findings, including Moshier's remarks about TLA's pragmatics, and concluded that the "preponderance of the evidence supports a [less-than-marked] limitation on interacting and relating [with] others."  (Tr. 49.)  As such, the ALJ's error in this domain, if any, was harmless.

### D.  Remand is Not Necessary for the ALJ to Again Rate Plaintiff's Functional Domains

In response to the Commissioner's arguments (and presumably this Court's conclusions) that the ALJ committed at most harmless error in rating TLA's functional domains (Def.'s Mot. Summ. J. at 5-6), Plaintiff argues that the Commissioner impermissibly offers post-hoc reasons to justify the ALJ's conclusions (Pl.'s Resp. to Def.'s Mot. Summ. J. at 2).  The Court agrees with Plaintiff that its usual role is to determine whether the conclusions reached by the ALJ follow the requisite legal standards and are supported by substantial evidence.  *See Longworth v. Comm'r of Soc. Sec.*,

18

402 F.3d 591, 595 (6th Cir. 2005).  On the other hand, harmless-error review of an ALJ's disability determination is not prohibited.  *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969) (providing that courts are not required to "convert judicial review of agency action into a ping-pong game" where "remand would be an idle and useless formality"); *see also Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result."); *cf. Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("Generally, . . . we review decisions of administrative agencies for harmless error. . . . Accordingly, if an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.").

In this case, the Court has analyzed the record in a light favorable to Plaintiff and determined that the record evidence dictates that TLA was not markedly limited in two, nor extremely limited in one, of the three following domains: acquiring and using information, attending and completing tasks, or interacting and relating with others.  In light of such a conclusion, a remand because the ALJ made erroneous subsidiary findings is not warranted: the record makes clear that the ALJ would reaffirm his broader determination that TLA did not functionally equal a listing.  In fact, the ALJ has already made explicit that he gave "significant weight" to the only opinion in the record that rated TLA's functional domains — and that opinion provides that TLA had at least less-than-marked limitations in all six domains.  Plaintiff has not shown that she was deprived of a substantial procedural right.  *Cf. Wilson*, 378 F.3d at 546-47.  Nor has Plaintiff shown that the ALJ's possibly erroneous ratings prejudiced the disability claim on the merits.  *See Rabbers*, 582 F.3d at 648.  The

Court therefore believes that this is the rare case where remand would be a formality.

## V.  CONCLUSION AND RECOMMENDATION

For the reasons set forth above, this Court finds that substantial evidence supports the ALJ's ratings of TLA's limitations in the functional domains of acquiring and using information, attending and completing tasks, or interacting and relating with others.  The Court therefore RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 8) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 11) be GRANTED, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner of Social Security be AFFIRMED.

## VI.  FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97.  Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office.  *See* E.D. Mich. LR 5.1.  A copy of any objections is to be served upon this magistrate judge but this does not constitute filing.  *See* E.D. Mich. LR 72.1(d)(2).  Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be

filed within seven (7) days of service of the response.  E.D. Mich. LR 72.1(d)(3), (4).


                                        s/Laurie J. Michelson
                                        LAURIE J. MICHELSON
                                        UNITED STATES MAGISTRATE JUDGE

Dated:  November 6, 2012


                        CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document  was served on the attorneys and/or parties of record by electronic means or U.S. Mail on November 6, 2012.


                                        s/Jane Johnson
                                        Deputy Clerk


21